1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   M.S. DOE, an individual,              No. 2:24-cv-02640-DJC-CSK

12                Plaintiff,

13        v.                               ORDER

14   COUNTY OF PLUMAS; BRANDON
     COMPTON, in his individual and
15   official capacities; and DOES 1
     through 20, inclusive,
16

17                Defendants.

18

19

20        Plaintiff, a former inmate, alleges she was sexually assaulted by a correctional

21   officer over 10 years ago.  After she was released from jail, Plaintiff alleges the

22   correctional officer contacted her repeatedly at home and at work to pursue her

23   romantically.  Plaintiff also alleges the correctional officer made numerous threats to

24   keep her from reporting the assault.  Finally, Plaintiff alleges that, when she reported

25   the assault, the county inadequately investigated her claims.  Plaintiff now brings state

26   and federal claims stemming from the sexual assault and the correctional officer and

27   county's actions afterwards.  Defendants have moved to dismiss Plaintiff's claims,

28   arguing all are untimely, and many are inadequately pled.

1

Having considered the Parties' briefings and arguments, the Court will grant Defendants' motions in part and deny them in part.

**BACKGROUND**

Plaintiff M.S. Doe alleges that she was an inmate in the Plumas County Jail ("Jail") in Quincy, California, from fall 2012 through spring 2013. (First. Am. Compl. ("FAC") (ECF No. 32) ¶ 31.) Plaintiff was housed in a general population cell which was located across from the Jail's control room. (*Id.* ¶ 32.) During that time, Defendant Brandon Compton was employed as a correctional officer by the Jail, typically working the evening shift. (*Id.* ¶ 33.)

Plaintiff alleges that, "[o]n many occasions, while Plaintiff was being moved from her cell," Defendant Compton would position himself behind her and "aggressively grope" her buttocks. (*Id.* ¶ 34.) In addition, Plaintiff alleges that, in or about December 2012 or January 2013, she was taken out of her cell around 10:00 PM by Defendant Compton along with another female inmate in order to perform janitorial tasks. (*Id.* ¶ 35.) Plaintiff alleges Defendant Compton ordered her to sweep the control room and ordered the other female inmate to clean a different room, thereby separating them. (*Id.*) Plaintiff alleges that once Defendant Compton had isolated her in the control room, he forced her against the desk and took her pants down. (*Id.* ¶ 36.) Defendant Compton stated "you're going to feel this" as he unbuckled his pants and revealed his penis. (*Id.*) Plaintiff told Defendant Compton "I don't want to," to which Defendant Compton responded, "do you ever want to see your kid again." (*Id.*) Then Defendant Compton "pushed Plaintiff over and forcibly had sexual intercourse with her." (*Id.*) Plaintiff alleges she was raped for about five minutes, after which Defendant Compton withdrew his penis and ejaculated. (*Id.*) Defendant Compton put both Plaintiff and the other female inmate back in their cell. (*Id.* ¶ 37.)

After Plaintiff was released from custody in or about February 2013, she was briefly employed by Defendant the County of Plumas ("County") as extra help in the County's animal shelter. (*Id.* ¶¶ 38, 44.) During Plaintiff's employment at the shelter,

2

1   Defendant Compton repeatedly came to her worksite and attempted to interact with

2   her. (*Id.* ¶ 44.) Defendant Compton also called and messaged her, and asked her to

3   send him nude pictures, which she declined to do. (*Id.*) Plaintiff eventually informed

4   her supervisor at the shelter that Defendant Compton had "done things to her while

5   she was an inmate in the jail." (*Id.*) Plaintiff believes her supervisor reported the

6   matter to the Plumas County Sheriff's Department ("Sheriff's Department"). (*Id.*)

7   Ultimately, Plaintiff alleges that the "frequent unnecessary and unwelcome visits by

8   Compton created a hostile and intimidating work environment that subsequently

9   resulted in the termination of Plaintiff's employment on or about 2013." (*Id.* ¶ 45.)

10      Plaintiff also alleges that, after she was released from custody, Defendant

11  Compton phoned her at mother's home and asked her to go to dinner with him. (*Id.*

12  ¶ 38.) Plaintiff declined. (*Id.*) In response, Defendant Compton threatened "you're

13  going to [Child Protective Services ("CPS")] with your kids" and "you could do time for

14  that too." (*Id.*) Plaintiff alleges Defendant Compton subsequently appeared at the

15  "courthouse when she was appearing for family court hearings regarding the custody

16  of her child" and that it appeared he "was trying to intimidate her into not testifying or

17  giving evidence against him during an investigation," as Defendant Compton was

18  already "aware of a potential investigation into his conduct at the jail." (*Id.* ¶ 39.)

19      Indeed, shortly after being warned not to share evidence on Defendant

20  Compton, Plaintiff was called to the Chester substation of the Sherriff's Department in

21  or about February or March 2013 to speak to an officer assigned to investigate

22  Defendant Compton. (*Id.* ¶ 40.) The investigator stated he knew Plaintiff and

23  Defendant Compton had previously conversed on the phone. (*Id.*) Plaintiff alleges

24  she "then knew that the investigator had already spoken to Compton before speaking

25  to her, since the investigator knew that Compton had called her." (*Id.*) The

26  investigator asked Plaintiff if anything inappropriate had occurred with Defendant

27  Compton. (*Id.*) Plaintiff alleges that, fearing Defendant Compton's threats to have her

28  child taken away by CPS, she answered in the negative. (*Id.* ¶ 41.) Plaintiff alleges she

1  "observed her answer was what the investigator was looking for and he ended the
2  interview." (*Id.*)  Plaintiff alleges the investigation overall was mishandled, as the
3  investigator violated investigative procedures and failed to collect and preserve
4  evidence in order to "protect Officer Compton." (*Id.* ¶¶ 42–43, 52–54.)  Plaintiff
5  alleges she received a Facebook message a year after being interviewed from
6  Defendant Compton thanking her for "not telling the truth." (*Id.* ¶ 41.)

7          Plaintiff alleges that, after she left her employment at the animal shelter, she
8  "remained very fearful of Compton" and "slipped into depression and substance
9  abuse." (*Id.* ¶ 73.)  In the latter part of 2013, she told her mother what Defendant
10  Compton had done, but her mother begged her not to report Defendant Compton
11  out of fear of retaliation. (*Id.*)  In January 2014, Plaintiff left Plumas County and
12  entered a treatment facility in Southern California. (*Id.* ¶ 74.)  When Plaintiff left the
13  treatment facility, she moved to Arizona. (*Id.* ¶ 75.)

14          In May 2014, Plaintiff hired an attorney to try to get visitation of her child. (*Id.*
15  ¶ 76.)  Plaintiff alleges that, when she attended the court hearing back in Plumas
16  County, Defendant Compton was sitting at the back of the court, just as he had done
17  at her earlier custody hearings. (*Id.*)  Plaintiff allege that "[e]ach time she was in
18  Plumas County she had to look over her shoulder in fear of Compton and the Sheriff's
19  Department." (*Id.* ¶ 77.)

20          In 2016, Plaintiff alleges her mother, who lived in Plumas County, was suffering
21  from kidney failure. (*Id.* ¶ 78.)  Plaintiff alleges she was unable to move back to be
22  with her mother due to her fear of retaliation and harassment by Defendant Compton.
23  (*Id.*)  Instead, she moved to Nevada. (*Id.*)  "Even so, Plaintiff avoided travelling to
24  Plumas and her mother had to travel to see her in Nevada." (*Id.*)  Plaintiff alleges that,
25  once she moved to Nevada, Defendant "Compton was able to find her number and
26  called her again demanding to meet her." (*Id.* ¶ 79.)  Plaintiff told Defendant
27  Compton not to call her. (*Id.*)
28  ////

4

1    In 2019, Officer Goodson, a female correctional officer at the Jail, sued

2    Defendant Compton and the County alleging that Defendant Compton had sexually

3    harassed and assaulted her.  (*Id.* ¶ 46.)  Plaintiff, along with five former female inmates

4    of the Jail, were contacted by Officer Goodson's counsel in that case and asked to

5    provide declarations detailing their experiences with Defendant Compton.  (*Id.* ¶ 80.)

6    Plaintiff alleges that she was "highly fearful and reluctant to speak" with the counsel,

7    "expressing fear of retaliation and losing what little visitation she had with her children

8    because of Compton's threats."  (*Id.*)  Plaintiff alleges it "took several visits, including a

9    visit from her former supervisor who had reported the assault in 2013, before Plaintiff

10   agreed to provide a declaration describing the sexual assault she had experienced by

11   Compton while in the Plumas Jail."  (*Id.*)  Plaintiff alleges she expected the Sheriff's

12   Department to retaliate, but hoped that counsel could resolve the case without having

13   to divulge Plaintiff's name and declaration.  (*Id.*)  Plaintiff also alleges that she

14   "expected that her providing the declaration reporting that she had been sexually

15   assaulted, would finally result in being contacted by law enforcement to conduct a

16   criminal investigation."  (*Id.*)

17   Plaintiff alleges that, during that case, "the County became aware of sworn

18   statements of the written accounts of former female inmates, including Plaintiff, who

19   had been sexually harassed and sexually assaulted by then Officer Compton."  (*Id.*

20   ¶ 46.)  However, even after her sworn statement was provided to the Sheriff's

21   Department, she was never interviewed by an investigator.  (*Id.* ¶ 47.)  Plaintiff alleges

22   the County similarly failed to investigate the statements and claims of other female

23   inmates assaulted by Defendant Compton.  (*Id.* ¶¶ 49–51, 60–65.)

24   Plaintiff alleges that this failure to interview her "solidified in her mind that they

25   were not going to investigate Compton."  (*Id.* ¶ 81.)  Accordingly, Plaintiff "believed

26   and was reminded Compton's threats were real," and "remained under increased

27   duress that custody of her children would be threatened, and her visitation could even

28   be stopped by Plumas County," or that she could "go to jail over the child custody

1    issues as Compton warned her." (*Id*. ¶ 82.)  Plaintiff further alleges that during the

2    pendency of the lawsuit against Defendant Compton, Plaintiff believed Officer

3    Goodson would not prevail, and that she would be the target of retaliation.  (*Id*. ¶ 83.)

4    Plaintiff's fears were heightened when Officer Goodson was fired in July 2019 in

5    retaliation for filing her lawsuit, and the County pursued criminal charges against her.

6    (*Id*. ¶¶ 85–86, 92–93.)  Plaintiff further alleges the County fired her former supervisor at

7    the shelter and pursued criminal charges against her as well. (*Id*. ¶ 88.)

8            In early 2024, Plaintiff learned that Officer Goodson had won her case against

9    Defendant Compton and the County, and that the Federal Court in Sacramento had

10    ordered the County to investigate Defendant Compton's sexual abuse. (*Id*. ¶ 95.)  In

11    light of this news, Plaintiff agreed to meet with attorneys in Nevada to explore

12    pursuing her claims. (*Id*. ¶ 96.)  Plaintiff alleges that "several circumstances gave her

13    the courage to meet with attorneys": first, she learned the Federal Court had acted;

14    second, her mother had passed away in 2023 and would no longer be subject to

15    retaliation if she reported the assault; and finally, her children were now teenagers

16    and could speak for themselves in the event of any CPS proceedings. (*Id*. ¶¶ 93, 96.)

17            Plaintiff filed this action on September 28, 2024, bringing thirteen causes of

18    action in her operative First Amended Complaint for (1) Sexual Harassment under the

19    California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(j)(1),

20    *et. seq.* (against Defendant Compton and the County); (2) Retaliation under FEHA,

21    Gov't Code § 12940(h) (against the County); (3) Failure to Prevent Harassment and

22    Retaliation under FEHA, Gov't Code § 12940(k) (against the County); (4) violations of

23    the Tom Bane Civil Rights Act ("Bane Act"), Cal. Civ. Code § 52.1, *et seq.* (against

24    Defendant Compton and the County) ; (5) Sexual Assault/Sexual Battery under Civ.

25    Code §1708.5 (against Defendant Compton and the County); (6) Sexual Harassment

26    under Civ. Code § 51.9 (against Defendant Compton and the County); (7) Gender

27    Violence under Civ. Code § 52.4 (against Defendant Compton and the County);

28    (8) Cruel and Unusual Punishment/Excessive Force under 42 U.S.C. § 1983 (against

1   Defendant Compton and the County); (9) Failure to Protect under 42 U.S.C. § 1983

2   (against Defendant Compton and the County); (10) Due Process/Bodily Integrity

3   under 42 U.S.C. § 1983 (against Defendant Compton and the County); (11) Equal

4   Protection under 42 U.S.C. § 1983 (against Defendant Compton and the County);

5   (12) Sex Trafficking under 18 U.S.C. §§ 1591, 1594(a) (against Defendant Compton

6   and the County); and (13) Forced Labor under 18 U.S.C. § 1589 (against Defendant

7   Compton and the County). (*Id.* ¶¶ 101–226.) The County and Defendant Compton

8   moved to dismiss Plaintiff's claims on March 10, 2025. (Compton Mot. Dismiss (ECF

9   No. 34); County Mot. Dismiss (ECF No. 35).) The Court held a hearing on May 15,

10  2025, with Calvin Chang and Eric Lambdin appearing for Plaintiff, Nicholas Kloeppel

11  appearing for the County, and Serena Warner appearing for Defendant Compton.

12  The matter was submitted.

13                          **LEGAL STANDARD**

14          A party may move to dismiss for "failure to state a claim upon which relief can

15  be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint

16  lacks a "cognizable legal theory or sufficient facts to support a cognizable legal

17  theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

18  The court assumes all factual allegations are true and construes "them in the light

19  most favorable to the nonmoving party." *Steinle v. City & Cnty. of San Francisco*, 919

20  F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d

21  1480, 1484 (9th Cir. 1995)). That said, if the complaint's allegations do not "plausibly

22  give rise to an entitlement to relief" the motion must be granted. *Ashcroft v. Iqbal*, 556

23  U.S. 662, 679 (2009). A complaint need contain only a "short and plain statement of

24  the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not

25  "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

26  However, this rule demands more than unadorned accusations; "sufficient factual

27  matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same

28  vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* "A claim

                                        7

1    has facial plausibility when the plaintiff pleads factual content that allows the court to

2    draw the reasonable inference that the defendant is liable for the misconduct

3    alleged." *Id*.

4        In granting a motion to dismiss, a court must also decide whether to grant leave

5    to amend.  Leave to amend should be freely given where there is no "undue delay,

6    bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the

7    opposing party by virtue of allowance of the amendment, [or] futility of amendment

8    . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Cap., LLC v. Aspeon, Inc.*,

9    316 F.3d 1048, 1052 (9th Cir. 2003).  Dismissal without leave to amend is proper only

10   if it is clear that "the complaint could not be saved by any amendment."  *Intri-Plex*

11   *Techs., Inc. v. Crest Grp., Inc.*, 499 F. 3d 1048, 1056 (9th Cir. 2007) (quoting *In re Daou*

12   *Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005)).

13                                        **ANALYSIS**

14   **I.    Timeliness of Plaintiff's Claims**

15       As a threshold issue, Defendants contend none of Plaintiff's claims are timely as

16   they are brought more than 10 years after her alleged assault by Defendant Compton,

17   well outside the statutes of limitations periods for her claims, and are not saved by

18   either equitable tolling or estoppel.  (County Mot. Dismiss at 6–20; Compton Mot.

19   Dismiss at 10–22).  Defendants also argue Plaintiff has failed to satisfy the claims

20   presentation requirements for her state law claims.  (County Mot. Dismiss at 14–19;

21   Compton Mot. Dismiss at 10–14.)

22       A motion to dismiss based on a statute of limitations defense is properly

23   brought under Rule 12(b)(6).  *See Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 996–

24   97 (9th Cir. 2006).  However, a "claim may be dismissed as untimely pursuant to a

25   12(b)(6) motion 'only when the running of the statute [of limitations] is apparent on the

26   face of the complaint.'"  *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720

27   F.3d 1174, 1178 (9th Cir. 2013) (quoting *Von Saher v. Norton Simon Museum of Art at*

28   *Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)); *see also Ritchie v. United States*, 210 F.

1  Supp. 2d 1120, 1123 (N.D. Cal. 2002) ("Where the facts and dates alleged in a

2  complaint demonstrate that the complaint is barred by the statute of limitations,

3  [dismissal] should be granted.").

4       Here, the Court finds that Plaintiff's federal claims under section 1983 are timely

5  as Plaintiff has plausibly pled estoppel by duress under California law, which relieves

6  her filing delay.  However, the Court finds that Plaintiff's remaining federal claims

7  brought under the Trafficking Victims Protection Act ("TVPA") are untimely, as TVPA

8  claims are subject to a 10-year statute of limitations and Plaintiff has not demonstrated

9  that federal tolling or estoppel applies.  Finally, the Court finds that Plaintiff's state law

10  claims are timely, as those claims similarly benefit from estoppel by duress.

11  Accordingly, the Court will dismiss Plaintiff's Twelfth through Thirteenth Causes of

12  Action under the TVPA only.

13      **A.    Plaintiff's Federal Claims under 42 U.S.C. § 1983 are Timely**

14       Plaintiff brings four causes of action under 42 U.S.C. § 1983 arising out of her

15  sexual assault by Defendant Compton while in detention.  (*See* FAC ¶¶ 166–200.)  "It is

16  well-established that claims brought under [section] 1983 borrow the forum state's

17  statute of limitations for personal injury claims, and in California, that limitations period

18  is two years."  *Action Apartment Ass'n v. Santa Monica Rent Control Op. Bd.*, 509 F.3d

19  1020, 1026 (9th Cir. 2007) (citations omitted); *see also* Cal. Code Civ. Proc. § 335.1

20  (establishing a two-year statute of limitations for personal injury actions).  When a

21  section 1983 claim accrues is "a matter of federal law, 'governed by federal rules

22  conforming in general to common-law tort principles.'"  *Gregg v. Haw., Dep't of Pub.*

23  *Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (quoting *Wallace v. Kato*, 549 U.S. 384, 388

24  (2007)).  Accrual of section 1983 claims is thus dictated by the "discovery rule" which

25  determines a claim has accrued "when the plaintiff knows or has reason to know of the

26  injury that is the basis of the action and the cause of that injury."  *Id.*  Generally, the

27  applicable statute of limitations starts to run upon accrual of the plaintiff's claim.  *See*

28  *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009).

1    Here, Plaintiff's claims accrued in early 2013 when she was sexually assaulted by

2    Defendant Compton as she was clearly aware of the assault he allegedly committed

3    against her.  (FAC ¶¶ 35–37.)  Applying the two-year statute of limitations, her claims

4    are untimely by about nine years, absent tolling or estoppel.[1]

5    When a federal court applies the forum state's statute of limitations, the court

6    also applies the forum state's tolling rules.  *Soto v. Sweetman*, 882 F.3d 865, 871 (9th

7    Cir. 2018).  Thus, the Court borrows California's statutory and equitable tolling rules to

8    the extent they are not inconsistent with federal law.  *See Azer v. Connell*, 306 F.3d

9    930, 936 (9th Cir. 2002); *Jones v. Blanas*, 393 F.3d 918, 927–28 (9th Cir. 2004).

10    Here, the Court finds that Plaintiff's section 1983 claims are timely under

11    equitable estoppel, or estoppel by duress.  "[T]he doctrine of equitable estoppel takes

12    its life . . . from the equitable principle that no man will be permitted to profit from his

13    own wrongdoing in a court of justice."  *Doheny Park Terrace Homeowners Ass'n, Inc. v.*

14    *Truck Ins. Exch.*, 132 Cal. App. 4th 1076, 1089 (2005) (internal quotations omitted).

15    Estoppel may be appropriate in the statute of limitations context "where the

16    defendant's act or omission actually and reasonably induced the plaintiff to refrain

17    from filing a timely suit."  *Doe v. Marten*, 49 Cal. App. 5th 1022, 1028 (2020).  Notably,

18    California courts have found that "estoppel by duress" may apply in the context of

19    sexual abuse.  S*ee, e.g., John R. v. Oakland Unified Sch. Dist.*, 48 Cal.3d 438, 445–46

20    (1989).  Under that doctrine, a defendant will be estopped from raising a statute of

21    limitations defense if: (1) the defendant engages in "unconscionable acts" such as

---

[1] The Court notes that California's longer statute of limitations for claims of sexual assault applicable to state law claims, *see* Gov't Code § 945.9; Code Civ. Proc. § 340.16, do not alter the two-year statute of limitations for section 1983 actions.  *See Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 579 (9th Cir. 2012) (Section 1983 plaintiff not entitled to Oregon's longer statute of limitations for childhood sexual response because "a state's residual personal injury statute of limitations, not a range of specialized statutes of limitations, should be applied to [section] 1983 claims to prevent unnecessary litigation and preserve the efficacy of the [section] 1983 remedy") (citing *Wilson v. Garcia*, 471 U.S. 261, 272–73 (1985), *superseded by statute on other grounds as recognized by Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369 (2004); *see also Owens v. Okure*, 488 U.S. 235, 249–50 (1989) (holding that "where state law provides multiple statutes of limitations for personal injury actions, courts considering [section] 1983 claims should borrow the general or residual statute for personal injury actions").  Thus, Plaintiff's section 1983 claims are subject to California's two-year statute of limitations for personal-injury claims.

1   threats, intimidation, coercion, or misrepresentations that deter the plaintiff from filing

2   a claim, and (2) the plaintiff establishes she filed the claim within a reasonable time

3   after the effects of the acts ended. *Bianco v. Warner*, 562 F. Supp. 3d 526, 533 (C.D.

4   Cal. 2021).

5        Courts have recognized that a defendant's threats can "still hav[e] a deterrent

6   effect" long after a sexually abusive relationship ends. *Doe v. Bakersfield City Sch.*

7   *Dist.*, 136 Cal. App. 4th 556, 572 (2006).  For example, in *Bianco*, an actress brought

8   an action against a recording artist for sexual assault and sexual battery alleging the

9   artist perpetrated physical, sexual, psychological, and emotional abuse against her

10  over a period of several years.  562 F. Supp. 3d at 534.  When she escaped, the artist

11  also threatened to have her visa revoked and to punish her. *Id.*  The artist sought to

12  dismiss the plaintiff's claims, arguing that while the last incident had allegedly

13  occurred in 2013, plaintiff did not file her claims until 2021, making them untimely. *Id.*

14  at 528, 531.  However, the court found that the artist was estopped from raising a

15  statute of limitations defense as the plaintiff had plausibly alleged the artist "engaged

16  in unconscionable acts that could have caused Plaintiff to refrain from instituting legal

17  proceedings against him." *Id.* at 534.  In particular, the court reasoned that:

18          A reasonable jury could find that the effects of [the artist]'s
19          alleged unconscionable acts, including the perceived threat
            to Plaintiff's safety, immigration status, and career, persisted
20          years after her last contact with [the artist].  As a result of [the
            artist]'s abuse, Plaintiff also allegedly suffers from complex
21          Post-Traumatic Stress Disorder, anxiety, depression, and
            panic attacks.  Given Plaintiff's post-abuse struggles, a jury
22          could also find that Plaintiff filed suit within a reasonable time
23          after the coercive effects of [the artist]'s unconscionable acts
            ended.
24

25  *Id.* (cleaned up).  Accordingly, the court declined to dismiss plaintiff's claims. *Id.*

26        Plaintiff argues that she should similarly benefit from estoppel by duress

27  because she was sexually assaulted by Defendant Compton; she suffered extreme

28  emotional distress as a result of the assault; even after her release from detention,

1   Defendant Compton continued harassing her, including by threatening to have her

2   children taken away and showing up to her family court hearings and workplace to

3   deter her from reporting the sexual assault; when she reported the assault, the

4   Sheriff's Department inadequately investigated her claim, discouraging her from

5   coming forward; and, when she later gave a sworn statement in Officer Goodson's

6   case against Defendant Compton, she witnessed the County's retaliation against

7   Officer Goodson as well as her former supervisor at the animal shelter, making her

8   further fear pursing her claims.  (Opp'n Compton Mot. Dismiss (ECF No. 38) at 15–22;

9   Opp'n County Mot. Dismiss (ECF No. 39) at 3–7.)  The Court finds these allegations

10  sufficient to apply estoppel by duress.

11          First, Plaintiff has plausibly pled that Defendant Compton's threats and

12  intimidation, as well as the County's failure to adequately investigate her claims,

13  reasonably deterred her from filing her claims until now.  The First Amended

14  Complaint describes in detail how Plaintiff experienced ongoing psychological

15  distress out of fear that she would lose her children or experience other retaliation

16  once she left the Jail.  As Plaintiff alleges, her duress was not solely predicated on her

17  direct contact with Defendant Compton, but also on the County's inadequate

18  investigation of her and other inmate's complaints, as well as its retaliation against

19  individuals who reported sexual misconduct.  These allegations are sufficient for the

20  Court to infer that both Defendant Compton and the County engaged in

21  "unconscionable acts" which deterred Plaintiff from pursuing her claims.

22          Second, Plaintiff has plausibly pled that she pursued her claims in a timely

23  manner once the deterrent effect of Defendants' acts ended.  Defendants argue that

24  the deterrent effect, if any, of their actions should have reasonably ended in 2019

25  when Plaintiff provided the affidavit in the Goodson case detailing her sexual assault.

26  (Compton Mot. Dismiss at 20; County Mot. Dismiss at 10–11.)  However, even after

27  submitting a declaration in the Goodson case, Plaintiff alleges she feared taking any

28  further action given Defendant Compton's previous threats, the County's prior

1    inadequate investigation of her claims, and the County's retaliation against Officer

2    Goodson and her former supervisor for reporting misconduct.  Thus, Plaintiff has

3    plausibly pled the coercive effects of Defendants' acts extended beyond 2019 until at

4    least 2024 when she heard the news that Officer Goodson had won her case, which

5    encouraged her to pursue her claims without fear of retaliation, filing this action less

6    than a year later.  A jury could therefore find that Plaintiff filed suit within a reasonable

7    time after the coercive effects of Defendants' unconscionable acts ended.  *See Bianco*,

8    562 F. Supp. 3d at 534 ("But the issues of when the effects of [defendant]'s alleged

9    unconscionable acts ceased, and whether [p]laintiff filed suit within a reasonable time

10    after the coercive effects of these acts ended, are ultimately questions of fact not to be

11    determined by the court at this stage as a matter of law.")

12         Accordingly, the Court finds Plaintiff's Eighth through Eleventh Causes of Action

13    under 42 U.S.C. § 1983 are timely.

14         **B.    Plaintiff's Federal Claims under the TVPA are Untimely**

15         Plaintiff also brings two causes of action under the TVPA for Sex Trafficking and

16    Forced Labor arising out of her sexual assault by Defendant Compton.  (FAC ¶¶ 201–

17    226.)  These claims are subject to a 10-year statute of limitations.  *See* 18 U.S.C.

18    § 1595(c).  As with Plaintiff's section 1983 claims, Plaintiff's claims under the TVPA

19    accrued in 2013, when she was assaulted.  Thus, Defendants argue these claims are

20    untimely as they should have been brought by 2023.  (Compton Mot. Dismiss at 19;

21    County Mot. Dismiss at 19–20.)

22         The Court agrees.  The TVPA requires that all claims be brought within 10 years

23    of when the cause of action accrues or the victim reaches 18 years of age, whichever is

24    later.  18 U.S.C. § 1595(c).  Here, Plaintiff's claim accrued in 2013, when the alleged

25    sex trafficking and forced labor occurred.  Plaintiff did not bring her claims until

26    September 2024, over 10 years later.  Thus, absent tolling or estoppel, her claims are

27    untimely.

28    ////

1      Because the TVPA specifies a statute of limitations, federal, not state, tolling and

2   estoppel rules apply.  *Rupisan v. Downey S&L Ass'n, F.A.*, No. 5:10–cv–5755–JF/HRL,

3   2011 WL 941192, at *2 (N.D. Cal. Mar. 7, 2011) ("Federal equitable tolling doctrine

4   applies when a federal statute contains a specific statute of limitations.").  Plaintiff has

5   not addressed whether federal tolling or estoppel applies here, instead focusing on

6   estoppel under state law.  (*See* Opp'n County Mot. Dismiss at 3–7; Opp'n Compton

7   Mot. Dismiss at 14–22.)  However, having surveyed the caselaw, the Court does not

8   find that either doctrine is applicable here.

9      First, federal equitable <u>tolling</u> focuses on "whether there was excusable delay

10  by the plaintiff: 'If a reasonable plaintiff would not have known of the existence of a

11  possible claim within the limitations period, then equitable tolling will serve to extend

12  the statute of limitations for filing suit until the plaintiff can gather what information he

13  needs.'"  *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (quoting *Santa

14  Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000)).  Federal statutes of limitations

15  are presumptively entitled to equitable tolling as long as the plaintiff can prove (1) she

16  has been pursuing her rights diligently, and (2) that extraordinary circumstances

17  prevented timely filing.  *See Arellano v. McDonough*, 598 U.S. 1, 6 (2023); *Menominee

18  Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016).  A plaintiff must

19  demonstrate that she has been "reasonably diligent in pursuing [her] rights not only

20  while an impediment to filing caused by an extraordinary circumstance existed, but

21  before and after as well," up to the time of filing.  *Smith v. Davis*, 953 F.3d 582, 599

22  (9th Cir. 2020) (en banc).  "The burden of alleging facts which would give rise to

23  tolling falls upon the plaintiff."  *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993).

24      For example, in *C.C. v. Rashid*, No. 2:23-cv-02056-GMN-BNW, 2024 WL

25  5200543 (D. Nev. Dec. 20, 2024), the court considered whether the plaintiff's

26  complaint, which was filed approximately 6 years after she escaped sex trafficking and

27  which sought recovery for acts that occurred as long as 13 years before, was time-

28

14

1    barred.  *Id.* at *6.  The court found that plaintiff's claims were not subject to equitable

2    tolling, reasoning:

3              Plaintiff alleges that between her fear of her traffickers, her
4              damaged self-image, her trauma-primed emotional
              responses, and her impoverished living situation, she spent
5              years unable even to conceive of taking any action against
              those who gained from her abuse.  Moreover, . . . she alleges
6              that her emotional distress from being sexually abused is
              severe enough to have limited her ability to exercise her
7              rights.  While the Court sympathizes with Plaintiff, these
8              allegations do not demonstrate extraordinary circumstances
              that prevented her from timely filing.  Moreover, Plaintiff
9              does not describe what efforts she took to diligently pursue
10             her claim.

11   *Id.* at *8 (cleaned up).  Similarly, in *Tyla D. v. MGM Resorts Int'l*, No. 2:24-cv-00698-

12   APG-BNW, 2024 WL 4839744 (D. Nev. Nov. 19, 2024), the court found that a

13   trafficking victim could not benefit from equitable tolling for her TVPA claims,

14   reasoning that plaintiff's allegations "that she had nightmares about her experience

15   and suffered a 'mental block' that made her believe she would not be taken seriously

16   . . . do not demonstrate extraordinary circumstances that prevented her from timely

17   filing."  *Id.* at *2.  The court also noted that plaintiff did not "describe what efforts she

18   took to diligently pursue her claim during the 10-year period."  *Id.*

19         Similarly, here, Plaintiff has pled she was deterred from filing her claims due to

20   severe emotional distress resulting from her sexual assault by Defendant Compton,

21   Defendant Compton's continued harassment and threats to report her to CPS after the

22   assault, and her fears of retaliation by the County.  However, Plaintiff also alleges she

23   provided an affidavit in Officer Goodson's case in 2019 detailing her sexual assault by

24   Defendant Compton and experienced no attempted or actual retaliation by either

25   Compton or the County afterwards that would substantiate a finding of "extraordinary

26   circumstances."  She also failed to take any steps to pursue her claims for five years

27   after that point, despite having already come forward.  Thus, based on the caselaw

28   above, Plaintiff has demonstrated neither "extraordinary circumstances" that

1    prevented her from filing her claims until September 2024, nor reasonable diligence

2    in pursuing her claims up until that point.

3         Plaintiff has also failed to demonstrate equitable <u>estoppel</u> should apply.

4    Federal equitable estoppel, much like estoppel under California law, "focuses

5    primarily on the actions taken by the defendant in preventing a plaintiff from filing suit

6    . . . ." *Santa Maria*, 202 F.3d at 1176. "[E]quitable estoppel 'comes into play if the

7    defendant takes active steps to prevent the plaintiff from suing in time, as by

8    promising not to plead the statute of limitations.'" *Id.* (quoting *Cada v. Baxter*

9    *Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir. 1990)). The doctrine is also often

10   referred to as fraudulent concealment. *Est. of Amaro v. City of Oakland*, 653 F.3d 808,

11   813 (9th Cir. 2011). A plaintiff must plead "(1) knowledge of the true facts by the party

12   to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that

13   intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance."

14   *Id.* (quoting *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991)). "[E]quitable

15   estoppel applies when a plaintiff who knows of his cause of action reasonably relies on

16   the defendant's statements or conduct in failing to bring suit." *Stitt v. Williams*, 919

17   F.2d 516, 522 (9th Cir. 1990).

18        While California has recognized estoppel by duress as a form of equitable

19   estoppel in sexual assault cases, the Court has not found such an extension under

20   federal law. Rather, federal equitable estoppel seems primarily concerned with

21   whether information was actively concealed from the plaintiff, or whether the plaintiff

22   was misled, leading to the filing delay. *See Coppinger-Martin v. Solis*, 627 F.3d 745,

23   751 (9th Cir. 2010) ("Equitable estoppel may be invoked 'if the defendant takes active

24   steps to prevent the plaintiff from suing in time,' such as by misrepresenting or

25   concealing facts necessary to [a] claim.") (internal citations omitted) (quoting *Santa*

26   *Maria*, 202 F.3d at 1176–77). Plaintiff has not clearly pled either here.

27        Accordingly, Plaintiff's Twelfth through Thirteenth Causes of Action are

28   untimely, and will be dismissed.

16

### C.     Plaintiff's State Law Claims are Timely

Plaintiff brings four causes of action under the California Civil Code for violations of the Bane Act, Sexual Assault/Sexual Battery, Sexual Harassment, and Gender Violence.  (FAC ¶¶ 130–65.)  Defendants argue these claims should be dismissed because Plaintiff failed to comply with the California Government Claims Act presentation requirement and, even if this failure was excused, the claims are otherwise untimely under the applicable statute of limitations.  (Compton Mot. Dismiss at 10–14; County Mot. Dismiss at 14–16.)  Plaintiff also brings three claims under FEHA for Sexual Harassment, Retaliation, and Failure to Prevent Harassment and Retaliation.  (FAC ¶¶ 101–29.)  Defendants similarly argue these claims fail to comply with FEHA's claims filing requirement and were brought outside of FEHA's one-year statute of limitations, making them untimely.  (Compton Mot. Dismiss at 12–14; County Mot. Dismiss at 16–19.)

The Court finds these claims are timely.  Under California law, equitable estoppel may prevent a defendant from raising a statute of limitations defense "where the defendant's act or omission actually and reasonably induced the plaintiff to refrain from filing a timely suit."  *Doe v. Marten*, 49 Cal. App. 5th 1022, 1028 (2020).  As discussed above, Plaintiff has plausibly pled estoppel by duress based on the actions of Defendant Compton and the County.  *See* Section I.A *supra*.  Accordingly, the Court finds her state law claims were timely filed.

Estoppel may also excuse a plaintiff's failure to timely comply with claims presentation requirements.  The Government Claims Act, Gov't Code §§ 810 *et seq.*, "requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part."  *Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).  The claim must be filed or presented to the public entity no later than six months after the cause of action accrues.  Gov't Code § 911.2(a).  Similarly, before suing for violations of FEHA, claimants must file a timely and sufficient administrative complaint with the

1   California Civil Rights Department ("CRD") and receive a "right-to-sue" notice. Gov't

2   Code §§ 12960, 12965(c). In 2013, when Plaintiff's alleged FEHA claims accrued, the

3   time within which a plaintiff was required to file an administrative complaint was one

4   year. Gov't Code §12960(d) (former).

5          Notwithstanding these rules, "[i]t is well settled that a public entity may be

6   estopped from asserting the limitations of the claims statute where its agents or

7   employees have prevented or deterred the filing of a timely claim by some affirmative

8   act." *John R.*, 48 Cal.3d at 445. "Estoppel as a bar to a public entity's assertion of the

9   defense of noncompliance arises when the plaintiff establishes by a preponderance of

10  the evidence: (1) the public entity was apprised of the facts, (2) it intended its conduct

11  to be acted upon, (3) plaintiff was ignorant of the true state of facts, and (4) relied

12  upon the conduct to his detriment." *Christopher P. v. Mojave Unified School Dist.*, 19

13  Cal. App. 4th 165, 170 (1993). "[A]cts of violence or intimidation on the part of the

14  public entity that are intended to prevent the filing of a claim may create an estoppel."

15  *Id.* Where threats or intimidation are the basis of an estoppel claim, courts consider

16  "(1) whether any threats were in fact made [ ], (2) when the effect of any such threats

17  ceased, or (3) whether plaintiffs acted within a reasonable time after the coercive

18  effect of the threats had ended." *John R.*, 48 Cal.3d at 446. Where applicable, this

19  doctrine tolls the "the time for filing a claim against the [public entity] . . . during the

20  period that the [ ] threats prevented plaintiffs from pursuing their claims." *Id.*

21         For example, in *Groom v. City of El Paso de Robles*, No. CV 19-10359-PSG (Ex),

22  2020 WL 5947822 (C.D. Cal. Aug. 6, 2020), the plaintiff alleged that a police officer

23  sexually assaulted her in December 2017, then harassed and stalked her, and

24  subsequently sexually assaulted her again in April 2018. *Id.* at *5. Beginning in May

25  2018 there was an investigation of the officer, and the officer resigned in October

26  2018, and Plaintiff presented her claim to the city on February 22, 2019. *Id.* The

27  question before the court was whether equitable estoppel applied such that plaintiff's

28  presentation of her claims would be deemed timely despite being brought more than

1   six months after the plaintiff's claims accrued.  The court found that it did, reasoning

2   that the assaulting officer had continued to make threats to plaintiff not to disclose his

3   conduct into April 2018, and that the effect of the officer's threats continued during

4   the criminal investigation.  *Id.* at *5–6.  In particular, the court noted that plaintiff had

5   alleged that she believed that the assaulting officer was "still an officer," that he still

6   had a pistol, and that she continued to believe that the officer "would carry through

7   with his threat to hurt her and/or take away her children" if she pursued a civil claim

8   against him.  *Id.*

9       Here, Plaintiff alleges that she learned Officer Goodson had won her case

10   against Defendant Compton and the County in early 2024.  Plaintiff alleges she

11   subsequently presented her tort claim to the County on July 24, 2024, which the

12   County rejected as untimely on August 7, 2024.  (Opp'n County Mot. Dismiss at 12.)

13   Plaintiff also alleges she exhausted her administrative remedies with the CRD on or

14   about September 9, 2024, and that the CRD issued Plaintiff a right-to-sue letter.  (FAC

15   ¶ 20.)  Plaintiff then filed suit on September 28, 2024.  Plaintiff has plausibly pled that

16   the threat of retaliation by Defendant Compton and the County reasonably prevented

17   her from bringing suit until 2024.  *See* Section I.A *supra*.  Thus, the Court also finds

18   that Plaintiff timely complied with the claims presentation requirements for her state

19   law claims, as she filed her tort claim (non-FEHA claims) and administrative complaint

20   (FEHA claims) within a reasonable time after learning of Officer Goodson's victory in

21   federal court and seeking legal representation thereafter.

22       Accordingly, the Court finds that Plaintiff's First through Seventh Causes of

23   Action are timely.

24   **II.    Plaintiff's First Through Third Claims under FEHA are Adequately Pled**

25       As noted above, Plaintiff brings three claims under FEHA for Sexual

26   Harassment, Retaliation, and Failure to Prevent Harassment and Retaliation arising

27   from the harassment she allegedly endured from Defendant Compton while

28   employed at the County's animal shelter.  (FAC ¶¶ 101–29.)  The County argues these

1   claims are inadequately pled, as Plaintiff has neither pled that Defendant Compton's

2   harassing conduct was severe or pervasive, nor demonstrated that the County

3   retaliated by subjecting Plaintiff to an adverse employment action.  (County Mot.

4   Dismiss at 22–24.)

5          The Court disagrees.  To plead a prima facie case of harassment under FEHA, a

6   plaintiff must show: "(1) the plaintiff belongs to a protected group; (2) the plaintiff was

7   subjected to unwelcome harassment because of being a member of that group; and

8   (3) the harassment was sufficiently severe or pervasive to alter the conditions of

9   employment and create an abusive working environment." *Landucci v. State Farm Ins.*

10  *Co.*, 65 F. Supp. 3d 694, 703 (N.D. Cal. 2014*); see also Lawler v. Montblanc N. Am.,*

11  *LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013).  Here, Plaintiff alleges that "[t]hroughout her

12  short employment, Compton would repeatedly come to her work-site and attempt to

13  interact with her," and that "Compton's attempts to interact with Plaintiff were

14  unwelcome and intimidating," which created a "hostile and intimidating work

15  environment . . . ."  (FAC ¶¶ 44–45.)  It is well established that "[t]here is no recovery

16  for harassment that is occasional, isolated, sporadic, or trivial."  *Hughes v. Pair*, 46 Cal.

17  4th 1035, 1042–43 (2009).  However, Plaintiff plausibly alleges the harassment she

18  endured was far from sporadic or trivial, as Plaintiff was subjected to "repeated[]" and

19  "frequent unnecessary and unwelcome visits by Compton," who had previously

20  assaulted her.  (FAC ¶¶ 44–45.)  Given Defendant Compton's alleged sexual assault of

21  Plaintiff while she was incarcerated, and her allegations he subjected her to frequent

22  unwanted visits, the Court finds Plaintiff has sufficiently pled a hostile work

23  environment at this stage.

24         In addition, to plead a prima facie case of retaliation under FEHA, a plaintiff

25  must show (1) involvement in a protected activity, (2) an adverse employment action

26  and (3) a causal link between the two.  *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal. 4th 1028,

27  1042 (2005).  A "protected activity" under FEHA consists of opposing acts which are

28  unlawful under FEHA, such as harassment, discrimination, or retaliation based on race

1   or disability, or testifying or assisting in any proceeding alleging such a violation of

2   FEHA.  *See* Gov't Code §§ 12940(a)-(h).  Here, Plaintiff alleges that she "opposed and

3   complained about sexual harassment and other sexual misconduct to Defendant

4   County."  (FAC ¶ 114.)  In particular, Plaintiff alleges that, while working at the shelter,

5   she "informed her supervisor that Compton had done things to her while she was an

6   inmate in the jail," which her supervisor in turn reported to the Sheriff's Department.

7   (*Id*. ¶ 44.)  Thus, Plaintiff has plausibly pled she engaged in a protected activity.

8          In addition, Plaintiff alleges that the "frequent unnecessary and unwelcome

9   visits by Compton created a hostile and intimidating work environment that

10   subsequently resulted in the termination of Plaintiff's employment on or about 2013."

11   (*Id*. ¶ 45.)  Plaintiff argues that she "believed she had no choice but to quit" her job

12   due to Defendant Compton's harassment, such that the "hostile environment resulted

13   in the constructive discharge termination of Plaintiff's employment," which "is an

14   adverse employment action under FEHA."  (Opp'n County Mot. Dismiss at 24.)

15   Constructive discharge occurs when the employer's conduct effectively forces an

16   employee to resign.  *Steele v. Youthful Offender Parole Bd.*, 162 Cal. App. 4th 1241,

17   1253 (2008).  "In order to establish a constructive discharge, an employee must plead

18   and prove, by the usual preponderance of the evidence standard, that the employer

19   either intentionally created or knowingly permitted working conditions that were so

20   intolerable or aggravated at the time of the employee's resignation that a reasonable

21   employer would realize that a reasonable person in the employee's position would be

22   compelled to resign."  *Id*. (quoting *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238,

23   1251 (1994)).  Both a hostile work environment and adverse employment

24   decisions can support a constructive discharge theory.  *See Penn. State Police v.*

25   *Suders*, 542 U.S. 129, 140–41 (2004).  As discussed above, Plaintiff alleges she was

26   subjected to a hostile work environment due to Defendant Compton's ongoing

27   harassing visits while she worked at the shelter.  Thus, it is plausible Plaintiff felt she

28   had no choice but to quit to avoid his harassing behavior.

21

1    Finally, Plaintiff has sufficiently alleged a causal connection between reporting

2  Defendant Compton's assault to her supervisor and the County's failure to address

3  Defendant Compton's harassment at her workplace, as the Court can reasonably infer

4  Plaintiff told her supervisor about Defendant Compton's prior bad acts in response to,

5  and in the context of, reporting his ongoing harassment at her workplace.  (*See* FAC

6  ¶ 44.)  Plaintiff has also plausibly pled the County failed to adequately investigate her

7  claims of harassment, indicating the County did not take all reasonable steps to

8  prevent the harassment and retaliation.  (*See id.* ¶¶ 40–43, 52–54.)  Accordingly,

9  Plaintiff has sufficiently established a causal link between reporting the sexual assault

10  to her supervisor and her constructive discharge by the County.

11    For these reasons, the Court declines to dismiss Plaintiff's First through Third

12  Causes of Action under FEHA.

13  **III.    The County is Immune from Liability for Plaintiff's Fourth Through Seventh**

14  **Causes of Action Under State Law**

15    The County contends that, to the extent any of Plaintiff's state law claims for

16  violations of the Bane Act, Sexual Assault/Sexual Battery, Sexual Harassment, and

17  Gender Violence are timely, the County is immune from liability under Government

18  Code section 844.6(a) such that those claims must be dismissed against them.

19  (County Mot. Dismiss at 21–22.)

20    The Court agrees.  Under California's Government Claims Act, a public entity

21  generally cannot be held liable in an action for damages arising from "[a]n injury to

22  any prisoner."  Gov't Code § 844.6(a).  For purposes of this provision, a "prisoner" is a

23  person "confined in a correctional facility or institution" for "a penological or

24  correctional objective" or "as a part of the penal process[.]"  *Reed v. Cnty. of Santa*

25  *Cruz*, 37 Cal. App. 4th 1274, 1277 (1995) (emphasis omitted).  Immunity under this

26  provision does not extend to contract-based claims, claims for relief other than money

27  or damages, certain claims arising from interference with a prisoner's right to review of

28  the legality of their confinement, and certain claims arising from the failure to obtain

22

1   medical care for a prisoner.  *See* Gov't Code § 844.6(a); *see also id.* §§ 814, 845.4,

2   845.6.

3       Here, the Government Claims Act bars Plaintiff's state law claims for violations

4   of the Bane Act, Sexual Assault/Sexual Battery, Sexual Harassment, and Gender

5   Violence against the County.  At the time of the alleged sexual assault, Plaintiff was a

6   "prisoner" within the meaning of the statute, because "[o]n or about fall of 2012 and

7   into spring of 2013, Plaintiff was an inmate in the Plumas County Jail in Quincy,

8   California."  (FAC ¶ 31;) *see also see also* Gov't Code § 844 (the term "prisoner"

9   includes an inmate of "a prison, jail, or penal or correctional facility").  Thus, Plaintiff's

10  claims arise from "[a]n injury to [a] prisoner."  *See* Gov't Code § 844.6(a).  Further,

11  Plaintiff's claims do not fall within any of the statutory exceptions to the immunity

12  provision.  *See* Gov't Code §§ 814, 845.4, 845.6.

13      Plaintiff argues that the County is not entitled to immunity under the section

14  844.6(a) because section 945.9 of the California Government Code—which exempts

15  claims "arising out of an alleged sexual assault by a law enforcement officer" from

16  state and local government claim presentation requirements—"condemns sexual

17  assault by any law enforcement officer" and indicates a particular authorization to sue

18  which should control over general immunity.  (Opp'n County Mot. Dismiss at 22;) *see*

19  *also* Gov't Code § 945.9(a).  However, Government Code section 945.9 is not

20  inconsistent with section 844.6 simply because it condemns sexual assault by law

21  enforcement officers.  Section 844.6 applies only to public entities, not public

22  employees who commit assault, and Plaintiff may still maintain her claims against

23  Defendant Compton.  *See* Gov't Code § 844.6(d) ("Nothing in this section exonerates

24  a public employee from liability for injury proximately caused by his negligent or

25  wrongful act or omission.").  Moreover, while section 844.6 is an immunity statute,

26  section 945.9 concerns claim presentation and statute of limitations requirements.

27  Thus, there is no clear overlap in the statutes' scope.

28  *////*

1    Plaintiff also argues that the liability imposed by Government Code section

2 815.6 takes precedence over section 844.6's immunity provision.  (Opp'n County Mot.

3 Dismiss at 22.)  However, section 844.6 expressly provides that the immunity in that

4 section applies "[n]othwithstanding any other provision of this part," including section

5 815.6.  Accordingly, California courts have held that section 815.6 does not create an

6 exception to section 844.6.  *Bitner v. Dep't Corr. & Rehab.*, 87 Cal. App. 5th 1048,

7 1063 (2023) ("[S]ection 815 provides that the immunity provision of section 844.6

8 takes precedence over any liability imposed by section 815.6, and plaintiffs' argument

9 to the contrary is without merit.").

10    Finally, Plaintiff argues that the County is not entitled to immunity for Plaintiff's

11 Bane Act claim because, effective January 1, 2022, the California legislature revoked

12 public entities' immunity for Bane Act violations, including for injuries to prisoners

13 under Government Code section 844.6.  *See* Civ. Code § 52.1(n) ("The state immunity

14 provisions provided in Section[] . . . 844.6 . . . shall not apply to any cause of action

15 brought . . . against a public entity that employs a peace officer or custodial officer[.]").

16 However, California courts have held that the application of this amendment to the

17 Bane Act is not retroactive; in other words, it does not remove immunity for acts prior

18 to the 2022 amendment.  *See Wiley v. Kern High Sch.*, 107 Cal. App. 5th 765, 778–81

19 (2025).  As the acts at issue here occurred prior to 2022, the County is entitled to

20 immunity under section 844.6 for Plaintiff's Bane Act claims.

21    In sum, the County is entitled to immunity from Plaintiff's non-FEHA state law

22 claims under the Government Claims Act.  Accordingly, the Court will dismiss

23 Plaintiff's Fourth through Seventh Causes of Action against the County to the extent

24 Plaintiff is seeking damages.[2]  Furthermore, the Court finds that granting leave to

---

[2] The Court notes that, while Government Code section 844.6(a) provides immunity for claims for damages, Plaintiff generally requests an order "enjoining Defendants, their agents, officials, employees, and all persons acting in concert from continuing the unlawful acts, conditions, and practices described in this Complaint."  (FAC at 35.)  To the extent Plaintiff seeks injunctive relief for her claims for violations of the Bane Act, Sexual Assault/Sexual Battery, Sexual Harassment, and Gender Violence, those claims may proceed.

1    amend would be futile, as amendment will not cure the applicability of Government

2    Code section 844.6 to Plaintiff's claims.  Thus, these claims will be dismissed without

3    leave to amend.

4    **IV.    Plaintiff's Sixth Cause of Action for Sexual Harassment under Civil Code**

5    **section 51.9 is Inadequately Pled**

6         Defendant Compton argues that Plaintiff's Sixth Cause of Action for Sexual

7    Harassment under Civil Code section 51.9 is inadequately pled because Plaintiff has

8    not established a qualifying relationship between herself and Defendant Compton.

9    (Compton Mot. Dismiss at 22–24.)

10        The Court agrees.  In relevant part, section 51.9 provides that a "person is liable

11   in a cause of action for sexual harassment under this section when the plaintiff proves

12   . . . [t]here is a business, service, or professional relationship between the plaintiff and

13   defendant[,] or the defendant holds himself or herself out as being able to help the

14   plaintiff establish a business, service, or professional relationship with the defendant

15   or a third party."  Civ. Code § 51.9(a)(1).  Examples of qualifying relationships

16   enumerated in the statute include relationships between a plaintiff and their physician,

17   attorney, real estate appraiser, trust administrator, and landlord.  *Id.* § 51.9(a)(1)(A)–

18   (H).  The statute also provides that liability may extend to any "relationship that is

19   substantially similar to any of the above."  *Id.* § 51.9(a)(1)(I).

20        Plaintiff argues that the relationship of a jailer and a prisoner qualifies under the

21   statute because correctional officers owe a broad scope of duties to inmates, beyond

22   even the duties of, for example, a landlord to a tenant, justifying the application of

23   section 51.9 here.  (Opp'n Compton Mot. Dismiss at 22–23.)  However, the Court fails

24   to see how a jailer–prisoner relationship qualifies as a business, service, or

25   professional relationship as defined by section 51.9.  Unlike the enumerated

26   relationships in that section (physician, attorney, real estate agent, teacher, elected

27   official, etc.), the jailer-prisoner relationship is one characterized by custodial care

28   rather than by commercial activity or elected civic duty.  Plaintiff has not provided any

1    case authority to support a conclusion that this relationship falls within the statutory

2    interpretation.  Moreover, other courts provide support for the position that it does

3    not.  *Doe v. San Joaquin County*, No. 2:18-cv-667-TLN-AC, 2019 WL 2106175, at *4

4    (E.D. Cal. May 14, 2019) (holding "jailer-inmate relationships are inherently distinct

5    from the professional, business, or service relationships contemplated by [section]

6    51.9"); *see also Solesbee v. County of Inyo*, No. 1:13-cv-1548-AWI-JLT, 2014 WL

7    3890680, at *9 (E.D. Cal. Aug. 7, 2014) (dismissing section 51.9 claim brought by an

8    inmate on work release facing harassment because the alleged relationship did not

9    fall within the meaning of that section).

10         Thus, the Court will dismiss Plaintiff's Sixth Cause of Action against Defendant

11   Compton.

12   **V.    Plaintiff Has Inadequately Pled *Monell* Liability for Her Eighth through**

13   **Eleventh Causes of Action under 42 U.S.C. § 1983**

14         The County argues Plaintiff's claims for Cruel and Unusual

15   Punishment/Excessive Force, Failure to Protect, Due Process/Bodily Integrity, and

16   Equal Protection brought under 42 U.S.C. § 1983 stemming from her sexual assault by

17   Defendant Compton must be dismissed as Plaintiff has failed to adequately plead

18   liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  (County

19   Mot. Dismiss at 11–14.)  In particular, the County argues Plaintiff has failed to allege

20   Defendant "Compton's purported conduct was pursuant to the County's policies,

21   practice, custom, lack of training or ratification."  (*Id.* at 12.)

22         The Court finds Plaintiff's allegations are insufficient at this stage to establish

23   *Monell* liability.  To establish a municipality's liability under section 1983 based on

24   *Monell*, "a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of

25   which he was deprived; (2) that the municipality had a policy; (3) that this policy

26   amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that

27   the policy is the moving force behind the constitutional violation.'"  *Dougherty v. City*

28

1    *of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40*

2    *Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

3          Liability under *Monell* may be based on an express policy, i.e., "a policy

4    statement, ordinance, regulation, or decision officially adopted and promulgated."

5    *Monell*, 436 U.S. at 690.  "[A] plaintiff may [also] be able to prove the existence of a

6    widespread practice that, although not authorized by written law or express municipal

7    policy, is 'so permanent and well settled as to constitute a custom or usage with the

8    force of law.'"  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes*

9    *v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)).  However, a few "isolated or sporadic

10   incidents" are not enough to prove a municipality has an unconstitutional custom or

11   practice.  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  Rather, a custom or

12   practice must have "sufficient duration, frequency and consistency" that it has

13   "become a traditional method of carrying out policy."  *Id.*

14         In addition, "policies of action" and "policies of inaction" may both give rise to

15   liability under *Monell*.  *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014).  A policy

16   of inaction "is based on a government body's 'failure to implement procedural

17   safeguards to prevent constitutional violations.'"  *Id.* (quoting *Tsao v. Desert Palace,*

18   *Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012)).  A "failure to train" or "failure to investigate"

19   are among the commonly recognized policies of inaction.  *Id.*; *see Brizuela v. City of*

20   *Sparks*, 3:19-cv-0692-MMD-VPC, 2022 WL 3229389, at *35, 37 (D. Nev. Aug. 10, 2022)

21   (recognizing "failure to investigate" as valid theory for *Monell* liability).  In inaction

22   cases, the plaintiff must show, first, "that [the] policy amounts to deliberate

23   indifference to the plaintiff's constitutional right."  *Jackson*, 749 F.3d at 763 (quoting

24   *Tsao*, 698 F.3d at 1143).  This requires showing that the defendant "was on actual or

25   constructive notice that its omission would likely result in a constitutional violation."

26   *Tsao*, 698 at 1145.  Second, the plaintiff must show "that the policy caused the

27   violation in the sense that the municipality could have prevented the violation with an

28   appropriate policy."  *Id.* at 1143 (citations and internal quotation marks omitted).

1      Here, Plaintiff alleges that the County had a "widespread or longstanding

2   custom and practice of failing to investigate, address, and prevent sexual misconduct

3   by correctional staff, including sexual assault of inmates" which "included permitting

4   officers like Compton to continue working despite numerous allegations of

5   misconduct, failing to preserve or collect evidence, ignoring [Prison Rape Elimination

6   Act ("PREA")] requirements, and retaliating against individuals who report such

7   abuses." (FAC ¶¶ 171, 181, 190, 199.)  As evidence of this custom and practice,

8   Plaintiff points to affidavits submitted by other inmates as part of the Goodson case

9   detailing sexual misconduct by Defendant Compton and the County's failure to

10  adequately investigate or act on reports of that misconduct.  (*Id.* ¶¶ 30, 43, 49–55, 60–

11  67.)  Based on these reports, Plaintiff alleges that the "County has been aware of such

12  victimization of female inmates and has failed to take action to protect those in its care

13  by preventing and addressing staff sexual misconduct."  (*Id.* ¶ 64.)

14      However, Plaintiff has failed to plead when these other incidents of sexual

15  assault occurred or when they were reported to the County.  Without this information,

16  the Court cannot reasonably infer that the County had an actionable custom, policy, or

17  practice that was the moving force behind Defendant Compton's assault of Plaintiff.

18  *See Trevino*, 99 F.3d at 918 ("Liability for improper custom . . . must be founded upon

19  practices of sufficient duration, frequency and consistency that the conduct has

20  become a traditional method of carrying out policy."); *Villegas v. Gilroy Garlic Festival*

21  *Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (holding that municipal liability may be

22  established "by showing 'a longstanding practice or custom which constitutes the

23  standard operating procedure of the local government entity'") (quoting *Ulrich v. City*

24  *& Cnty. of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002)); *Connick v. Thompson*,

25  563 U.S. 51, 63 n.7 (2011) ("Contemporaneous or subsequent conduct cannot

26  establish a pattern of violations that would provide notice to the [municipality] and the

27  opportunity to conform to constitutional dictates . . . .").  While some information, such

28  as whether "previous cases are all manifestations of the same policy or custom, and

1    whether that policy or custom was the moving force behind the injury to decedent in

2    this case," may be factual issues to be determined following discovery, *see Estate of*

3    *Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1173–74 (E.D. Cal. 2019), Plaintiff

4    must first establish that at least some of Defendant Compton's misconduct occurred

5    before her sexual assault in 2013.  Thus, the Court finds that Plaintiff has not

6    sufficiently pled *Monell* liability based on an established custom or practice.

7        A plaintiff may also plead *Monell* liability where an "official with final policy-

8    making authority ratified a subordinate's unconstitutional decision or action and the

9    basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).  However, a

10   "policymaker's knowledge of an unconstitutional act does not, by itself, constitute

11   ratification." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).  Furthermore, "a

12   policymaker's mere refusal to overrule a subordinate's completed act does not

13   constitute approval." *Id.*  Rather, ratification requires the authorized policymaker to

14   make a "conscious, affirmative choice." *Gillette*, 979 F.2d at 1347.  Ratification "and

15   thus the existence of a de facto policy or custom, can be shown by a municipality's

16   post event conduct, including its conduct in an investigation of the incident." *Dorger*

17   *v. City of Napa*, No. 12-cv-440 YGR, 2012 WL 3791447, at *5 (N.D. Cal. Aug. 31, 2012).

18   To prove ratification, a plaintiff must also show that the ratification was (1) the cause in

19   fact, and (2) the proximate cause of the constitutional deprivation.  *Arnold v. Int'l Bus.*

20   *Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

21       Here, Plaintiff argues that the County ratified Defendant Compton's sexual

22   misconduct in 2013 when officers from the Sheriff's Department violated investigative

23   procedures by contacting Defendant Compton before Plaintiff was interviewed by the

24   Sheriff's Department concerning her assault claims, thereby allowing him to threaten

25   her into silence.  (Opp'n County Mot. Dismiss at 10–11.)  Plaintiff argues this led the

26   County to summarily close the investigation and permit Defendant Compton's

27   conduct to continue.  (*Id.*)  Plaintiff further alleges that, even following the Goodson

28

1  case, the County has continued ignoring inmates' reports of assault, evincing their

2  approval of Defendant Compton's behavior.  (*Id.*)

3      Plaintiff's arguments are focused on the County's ratification of Defendant

4  Compton's conduct.  However, Plaintiff has failed to identify a specific *official* with

5  policy-making authority who performed the ratification.  Plaintiff states, in relevant

6  part, that in 2013 she was interviewed concerning Defendant Compton's conduct by

7  an officer from the Sheriff's Department "who identified himself as an investigator

8  working on a case involving Officer Compton."  (FAC ¶ 40.)  Plaintiff states that the

9  interviewer asked her if there was "anything inappropriate with Officer Compton," to

10  which she "answered in the negative."  (*Id.* ¶ 41.)  Plaintiff then "observed her answer

11  was what the investigator was looking for and he summarily ended the interview."  (*Id.*)

12      Nowhere does Plaintiff allege that the interviewing officer was an official with

13  policy-making authority for the Sheriff's Department, nor does she allege an official

14  with policy-making authority (such as the Sheriff) later reviewed and signed off on the

15  investigating officer's report.  *Cf. Fuller v. City of Oakland*, 47 F.3d 1522, 1526 (9th Cir.

16  1995) (police chief who approved investigator's report and conclusion of no sexual

17  harassment ratified the investigator's conclusion); *Larez v. City of Los Angeles*, 946

18  F.2d 630, 645–48 (9th Cir. 1991) (police chief signed a letter stating that none of

19  plaintiff's excessive-force civilian complaints would be sustained, thereby ratifying the

20  investigation and search); *Robertson v. Bruckert*, 568 F. Supp. 3d 1044, 1049–50 (N.D.

21  Cal. 2021) (ratification adequately pled where proposed amended complaint alleged

22  police chief "expressly ratif[ied] the internal affairs investigation" of plaintiff's shooting

23  where officer was exonerated and municipality "'specifically found' that officer's

24  conduct in the various civil rights incidents was appropriate").  Plaintiff alleges that,

25  "[o]n information and belief, among the County officials who were aware of Plaintiff's

26  allegations, include, but are not limited to: Sheriff's Deputy Edward Obayashi, Sheriff

27  Gregory Hagwood, Undersheriff Dean Canalia, and Commander Chad Hermann."

28  (FAC ¶ 50.)  However, in order to support a ratification theory, Plaintiff must allege

1    what specific actions those policymakers took to ratify Defendant Compton's

2    misconduct.  *See Gillette*, 979 F.2d at 1348 (no ratification-based *Monell* theory of

3    liability where plaintiff "produced no evidence of affirmative or deliberate conduct by

4    [official] that may be said to have ratified [subordinate's] decision"); *Perryman v. City of*

5    *Pittsburg*, 545 F. Supp. 3d 796, 803 (N.D. Cal. 2021) (finding ratification theory

6    insufficient where pleading "failed to plead facts as to *how* policymakers ratified police

7    conduct") (emphasis in original).  As it stands, Plaintiff has not alleged with sufficient

8    particularity how or when an official policymaker, such as Sheriff Hagwood, learned of

9    her claims and affirmatively ratified Defendant Compton's acts.

10        Thus, Plaintiff's Eighth through Eleventh Causes of Action against the County

11    will be dismissed with leave to amend.

12    **VI.    Plaintiff's Twelfth and Thirteenth Causes of Action under the TVPA are**

13    **Inadequately Pled**

14        Finally, Defendants argue that, even assuming Plaintiff's causes of action under

15    the TVPA for Sex Trafficking and Forced Labor were timely, they are inadequately pled

16    because Defendant Compton's alleged sexual assault is not conduct that falls within

17    the scope of that act.  (Compton Mot. Dismiss at 24–26; County Mot. Dismiss at 19–21.)

18    In particular, Defendants argue that Plaintiff has failed to allege any commercial sex

19    act that occurred between herself and Defendant Compton in support of her sex

20    trafficking claim and has failed to allege she was subjected to forced labor.  (*Id.*)

21        The Court agrees.  Pursuant to 18 U.S.C. § 1595(a), victims of sex trafficking may

22    bring a civil action against both the perpetrator and "whoever knowingly benefits, or

23    attempts or conspires to benefit, financially or by receiving anything of value from

24    participation in a venture which that person knew or should have known has engaged

25    in" sex trafficking.  A perpetrator is someone who "knowingly . . . recruits, entices,

26    harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by

27    any means a person . . . knowing, or . . . in reckless disregard of the fact, that means of

28    force, threats of force, fraud, coercion . . . , or any combination of such means will be

1    used to cause the person to engage in a commercial sex act."  18 U.S.C. § 1591(a)(1).

2    A "commercial sex act" is "any sex act, on account of which anything of value is given

3    to or received by any person."  18 U.S.C. § 1591(e)(3).

4         Here, Plaintiff alleges Defendant Compton forced her to engage in commercial

5    sex because he "knowingly recruited, enticed, and solicited Plaintiff by removing her

6    from her unit and work assignments and exchanging special benefits and things of

7    value for sex acts, such as relief of Plaintiff from cleaning labor by substituting it for a

8    much shorter sexual favor." (FAC ¶¶ 202–4.)  However, Plaintiff's allegations do not

9    plausibly establish that relief from her janitorial duties was a thing of value.  Rather, the

10   Court reasonably infers from Plaintiff's allegations that the janitorial duties were a

11   pretense to remove Plaintiff from her cell in order to perform the alleged assault.

12   Plaintiff in no way received any benefits or payment as a result of participating in the

13   sexual assault.  Thus, Plaintiff has failed to plausibly plead a claim for sex trafficking.

14        Plaintiff has similarly failed to allege she was subjected to forced labor.  Under

15   18 U.S.C. § 1589, forced labor is perpetrated by someone who "knowingly provides or

16   obtains the labor or services of a person" by means which include force, threats,

17   physical restraint, or abuse (or threatened abuse) of law or legal process.  Plaintiff's

18   claim for forced labor here is premised on the allegation that, in perpetrating the

19   alleged sexual assault, Compton "forced labor in a sexual nature beyond legitimate

20   labor that may be required of inmates" on Plaintiff.  (FAC ¶ 217.)  In short, Plaintiff

21   alleges her sexual assault was forced labor.

22        The sexual assault allegedly committed by Defendant Compton, horrible as it

23   was alleged to have been, does not constitute forced labor under the TVPA.  It is true

24   that compulsory labor may include forced sexual chores, but the courts that have so

25   held contemplated situations wherein the victim was also forced to work for the

26   perpetrators.  *See, e.g., United States v. Kaufman*, 546 F.3d 1242 (10th Cir. 2008)

27   (defendants took in mentally ill victims and forced them to perform uncompensated

28   manual labor around the farm as well sexually explicit acts over at least a decade);

1  *United States v. Udeozor*, 515 F.3d 260 (4th Cir. 2008) (victim was forced to live with

2  defendants for four years during which time she was forced to care for their children,

3  clean the house, cook, and work without compensation in the defendant's medical

4  business, and was subject to repeated physical, emotional, and sexual abuse). Here,

5  by contrast, Plaintiff has alleged one incident of sexual assault and has not alleged she

6  was forced to work for Defendant Compton in any other capacity. The isolated nature

7  of Plaintiff's assault distinguishes this case from *Kaufman* and *Udeozor*.

8        Accordingly, Plaintiff's Twelfth and Thirteenth Causes of Action will be

9  dismissed. Further, the Court finds that dismissal without leave to amend is

10  appropriate here. First, as held in Section I.B *supra*, these claims are untimely.

11  Second, even if they were timely, as demonstrated above, they are inadequately pled

12  because Defendant Compton's conduct simply does not fall within the scope of the

13  TVPA. Accordingly, the Court finds that amendment would be futile, as the TVPA is

14  not intended to penalize the conduct at issue here.

15                         **CONCLUSION**

16        Accordingly, for the reasons set forth above, Defendants' Motions to Dismiss

17  (ECF Nos. 34, 35) are GRANTED IN PART as follows:

18           • Plaintiff's Fourth through Seventh Causes of Action are DISMISSED

19              against the County without leave to amend;

20           • Plaintiff's Sixth Cause of Action is DISMISSED against Defendant

21              Compton with leave to amend;

22           • Plaintiff's Eighth through Eleventh Causes of Action are DISMISSED

23              against the County with leave to amend;

24           • Plaintiff's Twelfth and Thirteenth Causes of Action are DISMISSED against

25              Defendant Compton and the County without leave to amend; and

26  ////

27  ////

28  ////

- Plaintiff is granted leave to file an amended complaint within thirty (30) days of this Order.

IT IS SO ORDERED.

Dated:   **August 14, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC4 – Plumas.24cv2640.MTD

34